FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2016 DEC 12  A 10: 42

WILLIAM W. BLEVINS

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

Howard Anthony Brown
**Plaintiff**

**CIVIL ACTION NO.**
**DEMAND FOR JURY TRIAL**

-Vs-

CITY OF NEW ORLEANS, MICHAEL S. HARRISON,
Superintendent of Police, New Orleans Police
Department, in his official and individual capacities;
LAWERENCE DUPREE, Commander of Seventh District,
New Orleans Police Department, in his official and
Individual capacities; K. WILLIAMS, Lieutenant
Of Seventh District, New Orleans Police Department,
In her Official and individual capacities; MITCHELL J. LANDRIEU,
Mayor of NEW ORLEANS, in his official and individual capacities;
REBECCA H. DIETZ, Attorney for CITY OF NEW ORLEANS, in her
Official and individual capacities; OFFICER K. BALANCIER, OFFICER
ERIC ILLARMO, OFFICER MARCUS MCNEIL, OFFICER D. WARTER,
OFFICER M. SARTAIN, OFFICER A. KELLY, OFFICER D. MILLON,
OFFICER M. THOMPSON, OFFICER M. HUNTER in their
Official and individual capacities,

**16-17080**
**COMPLAINT FOR DAMAGES**
**AND INJUNCTIVE AND**
**DECLARATORY RELIEF**
**SECT. S MAG. 4**

**Defendants**

## JURISDICTION

1.   This court has subject matter jurisdiction over the parties and this action

pursuant to title 18, U.S.C § 245 (B) (2) (E). This being an action authorized by law

to redress the federally protected activities to travel in or using any facilities of

interstate commerce.

Fee 400.00
Process
Dktd
CtRmDep
Doc. No.

1

**2.** This court has jurisdiction that is invoked under title 18 U.S.C. § 241, Conspiracy against rights.

**3.** This court also has jurisdiction that is invoked under title 42 U.S.C. § 1983, Deprivation of rights.

## PARTIES

4. Plaintiff Howard Anthony Brown, is a forty five year old male. One of the People of the United States Republic and the Republic of Louisiana.

5. On information and belief, Defendant CITY of NEW ORLEANS, is a municipal corporation that owns, operates, and governs the New Orleans Police Department pursuant to the laws of the state of Louisiana, at times material to this complaint.

6. On information and belief, Defendant Mayor MICTHELL J. LANDRIEU ("LANDRIEU") is the Mayor for the Corporation CITY of NEW ORLEANS, at times material to this complaint.

7. On information and belief, Defendant Attorney Rebecca H. Dietz ("Dietz") Is the Attorney of record for the Corporation CITY OF NEW ORLEANS at times material to this complaint.

8. On information and belief, Defendant Superintendent MICHAEL S. HARRISON ("HARRISON") is the Superintendent of Police for the CITY of New Orleans, at times material to this complaint.

9. On information and belief, Defendant Commander LAWERENCE DUPREE ("DUPREE') is the Commander for the Seventh Police District, at times material to this complaint.

10. On information and belief Defendants, LIEUTENANT K. WILLIAMS, OFFICER K. BALANCIER, OFFICER ERIC ILLARMO, OFFICER MARCUS MCNEIL, OFFICER D.

WARTER, OFFICER M.SARTAIN, OFFICER A. KELLY, OFFICER D. MILLON, OFFICER M. THOMPSON, and OFFICER M.HUNTER, were all at times material to this Complaint employees of Defendant CITY OF NEW ORLEANS and the New Orleans POLICE DEPARTMENT.

## STATEMENT OF FACTS

10.    On, November 29, 2016, at or about 12:00 p.m. I pulled up in the parking lot in front my place of business, on property that is privately owned. Located at 5741 Crowder Blvd., New Orleans, Louisiana, Republic 70127, on exiting my automobile and commence walking to the entrance of my business. I heard a voice saying "Let me have your driver's license", I turned around to notice that there was someone dressed in a uniform as a New Orleans Police Officer.  He was approximately, five feet seven inches tall, of light complexion, could be in his late fifties, early sixties. The vehicle did not identify its arrival on the scene by the use of a siren or red and blue overhead lights. I replied "excuse me?" he again stated, "I need your driver's license". I asked for what reason or you requiring me to give you a driver's license? One, I'm on private property, and two I am not a driver."

11.    He again asked me, while inspecting my automobile for a driver's license. Displayed on my automobile on the left side front mirror and rear mirror is a disclaimer that states, "TO ANY AND ALL AGENCY OF THE "STATE", INCORPORATED MUNICIPALITY, ENFORCERS OF ANY HOME CHARTERS PLEASE BE SO ADVISE. This is Private Property, Not for Hire, Not operating in a Commercial Capacity. Any attempt to convert this Private Property into a commercial one for the purpose of taxation you acknowledge doing so at your own peril. Don't wish

to contract…" There was no other markings, identification, or logos on my automobile, to lead one to believe that I was under any contract with any other private or public entity. I did not acknowledge his repeated request to turn over to him a driver's license.

12.    He then on his portable radio called for assistance.  Within two minutes, the fastest response time I have ever seen from New Orleans Police Department, Seventh District living in this community for over nine years. There were to my recollection six to eight units with the NOPD marking. At this point, with a vast amount of police officers on site I was fearful  that this was  an attempt to intimidate, oppress and physically assault me, which they did!, just so that I would turn over  to them my private property and answers  all of their
Questions.

13.   On arrival of these other units they again repeatedly asked me for a driver's license and without my consent or acknowledgment one of the officers approached my automobile and went inside it. He was about five feet eight inch, tall a black male mid to late twenties. I then in a loud voice yelled out to that officer asking him to stop, step away from my property, seized and desist from entering my automobile.

14.   At that point, I was physically assaulted by another officer that was on the scene. He grabbed me by the arm, and while doing so pushing me about two feet to the right of where I was standing. The officer that I called out to, telling him that that's my private property and to stay away. Came over to me aggressively,

4

went into my pocket, took out my wallet, and also removed my fire arm which was in the opposite pocket. At that point, I asked the officers for the warrant that allows them to search either me or my private property. At this point, I was placed in handcuffs and told that I was under arrest and I was placed in the back of one of their units.   I asked, what am I being arrested for? I was told that I was observed running a red light.

15.   A few minutes after I was placed under arrest and put in the back of the vehicle. I observed two another officer going through my wallet, removing my money and other personal items. To include, a Class "A" Commercial Driver's License, a State of Louisiana Conceal Permit. I then shouted to the officers informing them that by going through my private property, without my consent, you are violating my rights as a human being. Furthermore, you are acting outside the law, under the color of law. One of the officer told me to be quiet, that he has all the authority that he needs to do so.

16.  About thirty to forty five minutes while still in the back of the NOPD vehicle, I was asked by another officer to turn over my keys to my automobile. I did so and verbally informed the officer that I am doing so under duress. Thereafter, a tow truck was on site and my automobile was taken away. While still in the back of the unit, two females in NOPD uniform approached me stating their ranks as Lieutenants. Both of which are approximately five feet, five inches tall. Both were stoutly built, one had black hair and had on glasses, the other had blonde short hair. I refrained from speaking to them. After my private property was taken away, I was then taken out of the vehicle, they took the handcuffs off and asked

5

me to sign a few documents. My wallet was return to me without my class "A" commercial driver's license.

17.  At the end of this encounter with these officers I was left deprived of my dignity as a human being. I was left deprived of my fire arm. Left exposed to the criminal elements within the geographical landmass of New Orleans, without any means of protection. I was left deprived of my automobile add it not been for friends I would have to walk miles to return home. I was left deprived of my Commercial Class "A" driver's license that allows me to utilize the public highway for a living. I was left deprived of my tools that was in my automobile further depriving me of the tools that I need to provide for my family.

18.  on Thursday, December 1, 2016. In an attempt to retrieve my private properties and bring to light the conduct of the officers. I sent out in a correspondent to the Superintendent of the New Orleans Police Department, Michael S. Harrison and the Commander of the Seventh Police District, Lawrence Dupree. In that correspondent, I so informed them of the encounter, the fact that I was assaulted, and my private property was taken away without just cause or a warrant and that I was denied the right of due process. I further informed them that at this point, "I am willing to forgive, my God requires me to." However I am requesting that all of my property that was taken from me be so returned and an apology from any of them on behalf of their officer's conduct will suffice and that would be the end of this ordeal. However, if such an apology are not forth coming nor my private property returned to me. I will then proceed to file suit in federal court.

19.     I then thereafter in separate correspondents informed Rebecca H. Dietz, the Attorney of record for the municipal corporation, CITY OF NEW ORLEANS and Mitchell J. Landrieu, Mayor of said corporation, of the conduct, treatment and deprivation of Rights that I received from members of the New Orleans Police Department. In the correspondent to them, I informed them that if they so choose they could ensure that my private property that was taken be returned and an apology be forth coming and this matter would be laid to rest. Failure to do so, would require me to seek redress in federal court. (A deadline was given...). A public request was submitted to obtained all of the officers names, badge number and rank that was involved in this deprivation on rights while acting under the color of law, names are listed in this complaint as they appear in the police report.

## ARGUMENT

20.     This action arises from Officer K. Balancier, of the New Orleans Police Department, pouncing upon me while I was outside my automobile and then commenced to ask me for a driver's license. I informed the officer that I am not a driver. Thus, it was not required of me to have a driver's license. I was then physically assaulted by other officers my private property was taken without the due process of law, without a warrant, without just compensation or without by consent. I was then given a "notice of violation" ticket which site, R.S. 32:863.1, as the violation.

20. (A)   in researching the statue that was used to deprive me of my private property. I notice that nowhere did it make mention nor did it delegate any authority to the city of new Orleans, the city of new Orleans police department or

7

any other municipal corporation.  In fact, this section is neither ambiguous nor plural as to whom has the authority to act.

20. (B) R.S. sec. 863.1. -  Except as provided herein below, when the secretary determines that a vehicle is not covered by security as required by this chapter or that the owner or lessee has allowed the required security to lapse, he shall revoke the registration of the vehicle, impound or cancel the vehicle's license plate.

As you can see, one of the elements to be prove would be a requirement, was I required to have my automobile covered by security?. NO! I have a God given fundamental right to go from place to place without any penalty or sanction imposed.   The "secretary" as the statue alluded to is one Dr. Shawn Wilson representing the Louisiana department of transportation and development (DOTD).

## 21.                    DEFINITIONS

In order to understand the correct application of the statue in question, we must first define the terms used in connection with this point of law. As will be shown, many terms used today do not, in their legal context, mean what we assume they mean, thus resulting in the misapplication of statues in the instant case.

## 22.            AUTOMOBILE AND MOTOR VEHICLE

There is a clear distinction between an automobile and a motor vehicle. An automobile has been defined as: "The word "automobile" connotes a pleasure vehicle designed for transportation of persons on highways." American Mutual Liability Ins. Co., vs. Chaput, 60 A.2d 118, 120; 95 NH 200. While the distinction is

made clear between the two as the courts have stated; "A motor vehicle or automobile for hire is a motor vehicle, other than an automobile stage, used for the transportation of persons for which remuneration is received." International Motor Transit Co. vs Seattle, 251 P. 120. The term "motor vehicle" is different and broader than the word "automobile". City of Dayton vs. DeBrosse, 23 NE.2d 647, 650; 62 Ohio App.232.

The distinction is made very clear in:   Title 18 USC 31:

23.   **"Motor vehicle"** means every description or other contrivance propelled or drawn by mechanical power and used for commercial purposes on the highways in the transportation of passenger, or passengers and property.

24.   **"Used for commercial purposes"** means the carriage of persons or property for any fare, fee, rate, charge or other considerations, or directly or in directly in connection with any business, or other undertaking intended for profit.

Clearly, an automobile is private property in use for private purposes, while a motor vehicle is a machine which may be used upon the highways for trade, commerce, or hire.

**25.  TRAVEL**

"The term "travel" is a significant term and define as:

The term "travel" and "traveler" are usually construed in their broad and general sense... so as to include all those who rightfully use the highways viatically ( when being reimbursed for expenses) and who have occasion to pass over them for the purpose of business, convenience, or pleasure**." 25 Am.Jur. (1st) Highways, Sect. 427, Pg. 717.**

**"Traveler-** one who passes from place to place, whether for pleasure, instruction, business, or health." **Locket vs. State, 47 Ala. 45;**

9

**Bouvier's law Dictionary, 1914 ed., Pg. 3309.**

**"Travel"-** To go from one place to another at a distance; to journey; spoken of voluntary change of place. **White v. Beazley, 1 Barn. & Ald. 171; Hancock v. Rand, 94 N.Y. 1, 46 Am. Rep. 112;**

Therefore, the term "travel" or "traveler" refers to one who uses a conveyance to go from one place to another, and included all those who use the highways as a matter of Right.

Notice that in all these definitions, the phrase "for hire" never occurs. This term "travel" or "traveler" implies, by definition, one who uses the road as a means to move from one place to another.

Therefore, one who uses the road in the ordinary course of life and business for the purpose of travel and transportation is a traveler.

**26.  DRIVER**

The term "driver" in contradistinction to "traveler," is defined as:

**\* DRIVER**: one employed in conducting a coach, carriage, wagon, or other vehicles**…, Bouvier's Law Dictionary, (1914) p. 940**

Notice that this definition includes one who is "employed" in conducting a vehicle. It should be self-evident that this individual could not be "travelling" on a journey, but is using the road as a place of business.

**Black's Law Dictionary 3rd Edition:**

\*DRIVER: One employed in conducting or operating a coach, carriage, wagon or other vehicle, with horses, mules, or other animals, or a bicycle, tricycle, or motor car, though not a street railroad car. See Davis v. Petrinovich, 112 Ala. 654, 21 So. 344, 36 L.R.A. 615; Issacs v. Railroad Co., 7 Am. Rep 418, 47 N.Y. 122.

**Black's Law 4th Edition:**

*DRIVER: One employed in conducting or operating a coach, carriage, wagon, or other vehicle, with horses, mules, or other animals, or bicycle, tricycle, or motor car, though not a street railroad car. A person actually doing driving, whether employed by owner to drive or driving his own vehicle. Wallace v Woods, 340 Mo. 452, 102 S.W.2d 91, 97.

## 27. <u>TRAFFIC</u>

Having defined the terms "automobile", "motor vehicle", "traveler," "driver", and operator, the next term to define is "traffic".

"… Traffic thereon is to some extent destructive, therefore, the prevention of unnecessary duplication of auto transportation service will lengthen the life of the highways or reduce the cost of maintenance, the revenue derived by the state… will also tend toward the public welfare by producing at the expense of those operating for private gain, some small part of the cost of repairing the wear…"

<u>Northern Pacific R.R Co. vs. Schoenfeldt, 213 P. 26</u>

Note: In the above, the court expounded upon the key of raising revenue by taxing the "privilege" to use the public roads "at the expense of those operating for gain."

In the case. The word "traffic" is used in conjunction with the unnecessary Auto Transportation Service, or in other words, "vehicles for hire." The word "traffic" another word which is to be strictly construed to the conducting business.

"Traffic- Commerce, trade, sale or exchange of merchandise, bills, money and the like. The passing of goods and commodities from one person to another for an equivalent in goods or money…" <u>Bouvier's Law Dictionary, 1914 ed., Pg. 3307</u>

Here again, notice that this definition refers to one "conducting business.'' No mention is made of one who is traveling in his automobile. This definition is of one who is engaged in the passing of a commodity or goods in exchange for money, i.e...., vehicle for hire.

Furthermore, the words "traffic" and "travel" must have different meanings which the courts recognize. The difference is recognized in EX PARTE DICKEY, supra:

28.  The court, by using both terms, signified its recognition of a distinction between the two. But, what was the distinction? We have already defined both terms, but to clear up any doubt:

'' The word 'traffic' is manifestly used here in secondary sense, and has reference to the business of transportation rather than to its primary meaning of interchange of commodities." Allen vs. City of Bellingham, 163 P.18

Here the Supreme Court of the State of Washington has defined the word "traffic" (in either it's primary or secondary sense) in reference to business, and not to mere travel! So it is clear that the term "traffic'' is business related and therefore, it is "privilege." The net result being that "traffic" is brought under the (police) power of the legislature. The term has no application to one who is not using the roads as a place of business.

29.  LICENSE

It seems only proper to define the word "license," as the definition of this word will be extremely important in understanding the statues as they are properly applied:

12

"The permission, by competent authority to do an act which without permission, would be illegal, a trespass, or a tort." <u>People vs. Henderson, 218 NW. 2d 2, 4.</u>

"Leave to do a thing which licensor could prevent." <u>Western Electric Co. vs. Pacent Reproducer Corp., 42 F.2d 116, 118.</u>

**30**.   In order for these two definitions to apply in this case, the state would have to take up the position that the exercise of a Constitutional Right to use the public roads in the ordinary course of life and business is illegal, a trespass, or a tort, which the state could then regulate or prevent.

This position, however, would raise magnitudinous Constitutional questions as this position would be diametrically opposed to fundamental Constitutional Law.

In the instant case, the proper definition of a "license" is:

" a permit, granted by an appropriate governmental body, generally for consideration, to a person, firm, or corporation, to pursue some occupation or to carry on some business which is subject to regulation under the police power." <u>Rosenblatt vs. California State Board of Pharmacy</u>, 158 P.2d 199, 203.

This definition would fall more in line with the "privilege" of carrying on business on the streets.

**31**.   Most people think that "licensing'' is imposed by the state for the purpose of raising revenue, yet there may well be more subtle reasons contemplated; for

when one seeks permission from someone to do something he invokes the

jurisdiction of the licensor which, in this case, is the state. In essence, the licensee

may well be seeking to be regulated by the licensor.

"A license fee is a charge made primarily for regulation, with the fee to cover

costs and expenses of supervision or regulation." State vs. Jackson, 60 Wisc. 2d

700; 211 NW.2d 480, 487.

**32.                          POLICE POWERS**

The confusion of the police power with the power of taxation usually arises in

cases where the police power has affixed a penalty to a certain act, or where it

requires licenses to be obtained and a certain sum to be paid for certain

occupations. The power used in the instant case cannot, however, be the power

of taxation since an attempt to levy a tax upon a Right would be open to

Constitutional objection.

Each law relating to the use of police power must ask three questions:

1.  "Is there threatened danger?

2. Does a regulation involve a Constitutional Right?

3. Is this regulation reasonable?"

People vs Smith, 108 Am. St. Rep. 715; Bouvier's Law Dictionary, 1914 ed., under

"Police Power".

33.     When applying these three questions to the statue in question, some very

important issues emerge.

First "is there a threatened danger" in the individual using his automobile on

the public highways, in the ordinary course of life and business?

The answer is No! There is nothing inherently dangerous in the use of an automobile when it is carefully managed. Their guidance, speed, and noise are subject to a quick and easy control, under a competent and considerate manager, it is as harmless on the road as a horse and buggy.

It is the manner of managing the automobile, and that alone, which threatens the safety of the public. The ability to stop quickly and to respond quickly to guidance would seem to make the automobile one of the least dangerous conveyances. Yale Law Journal, December, 1905

"The automobile is not inherently dangerous." Cohens vs Meadow, 89 se 876; Blair vs. Broadmore, 93 SE 532

34.   To deprive all persons of the Right to use the road in the ordinary course of life and business, because one might, in the future, become dangerous, would be deprivation not only of the Right to travel, but also the Right to due process.

Next; does the regulation involve a Constitutional Right?

This question has already been addressed an answered in this brief, and need not be reinforced other than to remind this court that this Citizen does have the Right to travel upon the public highway by automobile in the ordinary course of life and business. It can therefore be concluded that this regulation does involve a Constitutional Right.

The third question is the most important in this case. "Is the regulation reasonable?"

35.   The answer is No! It will be shown later, that this licensing statue is oppressive and could be effectively administered by less oppressive means.

Although the Fourteenth Amendment does not interfere with the proper exercise of the police power, in accordance with the general principle that the

power must be exercised so as not to invade unreasonably the rights guaranteed by the United States Constitution, it is established beyond question that every state power, including the police power, is limited by the Fourteenth Amendment (and others) and by the inhibitions there imposed.

36.    Moreover, ultimate test of the propriety of police power regulations must be found in the Fourteenth Amendment, since it operates to limit the field of the police power to the extent of preventing the enforcement of statues in denial of rights that the Amendment protects. Parks vs. State, 64 NE 682

. Judgment without such citation and opportunity lacks all the attributes of a judicial   "With regard particularly to the U.S. Constitution, it is elementary that a right secured or protected by that document cannot be overthrown or impaired by any state police authority." Connolly vs. Union Sewer Pipe Co., 184 US 540 Lafarier vs. Grand Trunk R.R. Co., 24 A. 848;

   37.   "The police power of the state must be exercised in subordination to the provisions of the U.S. Constitution." Bacahanan vs. Wanley, 245 US 60; Panhandle Eastern Pipeline Co. vs. State Highway Commission, 294 US 613

   "It is well settled that the Constitutional Rights protected from invasion by the police power, include Rights safeguarded both by express and implied prohibitions in the Constitutions." Tiche vs. Osborne, 131 A. 60

   As a rule, fundamental limitations of regulations under the police power are found in the spirit of the Constitutions, not in the letter, although they are just as efficient as if expressed in the clearest language." Mehlos vs. Milwaukee, 146 NW 882

   38.    As it applies in the instant case, the language of the Fifth Amendment is clear:

"No person shall be … deprived of Life, Liberty, or Property without due process of law." As has been shown the courts at all levels have firmly established an absolute Right to travel.

In the instant case, the state, by applying commercial statues to all entities, natural and artificial persons alike, has deprived this free and natural person of the Right of Liberty, without cause and without due process of law.

## 39.  DUE PROCESS

"The essential element of due process of law are… Notice and The Opportunity to defend." Simon vs Craft, 182 US 427

Yet, not one individual has been given notice of the loss of his/her Right, let alone before signing the license (contract). Nor was the Citizen given any opportunity to defend against the loss of his/her right to travel, by automobile, on the highways, in the ordinary course of life and business. This amounts to an arbitrary deprivation of Liberty.

"There should be no arbitrary of Life or Liberty…" Barbour vs. Connolly, 113 US 27, 31; Yick WO vs Hopkins, 118 US 356 and…

"The right to travel is part of the Liberty of which a citizen cannot deprived without due process of law under the Fifth Amendment. This Right was emerging as early as the Magna Carta." Kent vs Dulles, 357 US 116 (1958).

The focal point of the question of police power and due process must balance upon the point of making the public highways a safe place for the public to travel. If a man travels in a manner that creates actual damage, an action would lie (civilly) for recovery of damages. The state could then also proceed against the individual to deprive him of his Right to use the public highways, for cause. This process would fulfill the due process requirements of the Fifth Amendment while

at the same time insuring that Rights guaranteed by the U.S. Constitution and the state constitutions would be protected.

**40.**  But unless or until harm or damage (a crime) is committed, there is no cause for interference in the private affairs or actions of a Citizen.

One of the most famous and perhaps the most quote definitions of due process of law, is that of Daniel Webster in his Dartmouth College Case (4 Wheat 518), in which he declared that by due process is meant:

"A law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial." State vs. Strasburg, 110 P. 1020; Dennis vs. Moses, 52 P. 333

**41**.  Somewhat similar to the statement that is a rule as old as the law that:

"No one shall be personally bound (restricted) until he has had his day in court," by which is meant, until he has been duly cited to appear and has been afforded an opportunity to be heard l determination; it is judicial usurpation and it is oppressive and can never be upheld where it is fairly administered. (12 Am. Jur. [1st] Const. Law, Sect. 573 Pg. 269).

Note: This sounds like the process used to deprive one of the "privilege" of operating a motor vehicle "for hire." It should be kept in mid, however, that we are discussing the arbitrary deprivation of the Right to use the road that all citizens have "in common."

**42.  SURRENDER OF RIGHTS**

A Citizen cannot be forced to give up his/her Rights in the name of regulation.

"… the only limitations found restricting the right of the state to condition the use of the public highways as a means of vehicular transportation for compensation are (1) that the state must not exact of those it permits to use the highways for

hauling for gain that they surrender any of their inherent U.S. Constitutional Rights as a condition precedent to obtaining permission for such use…" Riley vs Laeson, 142 So. 619

If one cannot be placed in a position of being forced to surrender Rights in order to exercise a privilege, how much more must this maxim of law, then, apply when one is simply exercising (putting into use) a Right? Hoke vs Henderson, 15 NC 15 and…

43.   "We find it intolerable that one Constitutional guaranteed Right should have to be surrendered in order to assert another." Simons vs. United States, 390 US 389.

Since the state requires that one give up Rights in order to exercise the privilege of driving, the regulation cannot stand under the police power, due process, or regulation, but must be exposed as a statue which is oppressive and one which has been misapplied to deprive the Citizen of Rights guaranteed by the United States Constitution and the state constitutions.

"Personal liberty, or the Right to enjoyment of life and liberty, is one of the fundamental or natural Rights, which has been protected by its inclusion as a guarantee in the various constitutions, which is not derived from, or dependent on, the U.S. Constitution, which may not be submitted to a vote and may not depend on the outcome of an election. It is one of the most sacred and valuable Rights, as sacred as the Right to private property… and is regarded an inalienable." 16 C.J.S., Constitutional Law, Sect.202, p.987

44.   This concept is further amplified by the definition of personal liberty:

"Personal liberty largely consists of the Right of locomotion to go where and when one pleases only so far restrained as the Rights of others may make it

necessary for the welfare of all other citizens. The Right of the Citizen to travel upon public highways and to transport his property thereon, by horse drawn carriage, wagon, or automobile, is not a mere privilege which may be permitted or prohibited at will, but the common Right which he has under his Right to life, liberty, and the pursuit of happiness. Under the Constitutional guarantee one may, therefore, under normal conditions, travel at his inclination along the public highways or in public places, and while conducting himself in an orderly and decent manner, neither interfering with nor disturbing another's Rights, he will be protected, not only in his person, but in his safe conduct." II Am. Jur. (1st) Constitutional Law, Sect. 329, p.1135 and furthermore...

45.   " Personal Liberty- consist of the power of locomotion, of changing situations, of removing one's person to whatever place one's inclination may direct, without imprisonment or restraint unless by due process of law." Bouvier's Law Dictionary, 1914 ed., Black's Law Dictionary, 5th Ed.

The Right of movement, the right of moving one's self from place to place without threat of imprisonment, the Right to use the public roads in the ordinary course of life. When the State allows the formation of a corporation it may control its creation by establishing guidelines (statues) for its operation (charters). Corporation who use the roads In the course of business do not use the roads in the ordinary course of life. There is a difference between a corporation and an individual. The United States Supreme Court has stated:

46. "... We are of the opinion that there is a clear distinction in this particular between an individual and a corporation, and that the latter has no right to refuse to submit its books and papers for examination on the suit of the State. The individual may stand upon his Constitutional Rights as a Citizen. He is entitled to

carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the State or to his neighbors to divulge his business, or to open his doors to investigation, so far as it may tend to incriminate him. He owes no such duty to the State, since he receives nothing therefrom, beyond the protection of his life, liberty, and property. His Rights are such as the law of the land long antecedent to the organization of the state, and can only be taken from him by due process of law, and in accordance with the Constitution. Among his Rights are the refusal to incriminate himself, and the immunity of himself and his property from arrest or seizure except under warrant of law. He owes nothing to the public so long as he does not trespass upon their rights."

**47**. "Upon the other hand, the corporation is a creature of the state. It is presumed to be incorporated for the benefit of the public. It receives certain special privileges and franchises, and holds them subject to the laws of the state and the limitations of its charter. Its rights to act as a corporation are only preserved to it so long as it obeys the laws of its creation. There is a reserved right in the legislature to investigate its contracts and find out whether it has exceeded its powers. It would be a strange anomaly to hold that the State, having chartered a corporation to make use of certain franchises, could not in exercise of its sovereignty inquire how those franchises had been employed, and whether they have been abused, and demand the production of corporate books and papers for that purpose." Hale vs. Hinkle, 201 US 43, 74-75

**48**.   Corporations engaged in mercantile equity fall under the purview of the State's admiralty jurisdiction, and the public at large must be protected from their activities, as they (the corporation) are engaged in business for profit.

"… Based upon the fundamental ground that the sovereign state has the plenary control of the streets and highways in the exercise of its police power, may absolutely prohibit the use of the streets as a place for the prosecution of a private business for gain. They all recognize the fundamental distinction between the ordinary Right of the Citizen to use the streets in the usual way and the use of the streets as a place of business or a main instrumentality of business for private gain. The former is a common Right, the latter is an extraordinary use. As to the former, the legislative power is confined to regulation, as to the latter, it is plenary and extends even to absolute prohibition. Since the use of the streets by a common carrier in the prosecution of its business as such is not a right but a mere license of privilege." Hadfield vs. Lundin, 98 Wash 516

It will be necessary to review early cases and legal authority in order to reach a lawfully correct theory dealing with this Right or "privilege." We will attempt to reach a sound conclusion as to what is a "Right to use the road" and what is a "privilege to use the road". Once reaching this determination, we shall then apply those positions to modern case decision.

**49.**   "Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them." Miranda vs Arizona, 384 US 436, 491 and…

"The claim and exercise of a constitutional Right cannot be converted into a crime." Miller vs. U.S., 230 F. 486,489 and…

"There can be no sanction or penalty imposed upon one because of this exercise of constitutional Rights." Snerer vs. Cullen, 481 F. 946

Streets and highways are established and maintained for the purpose of travel and transportation by the public. Such travel may be for business or pleasure.

**50.**   "The use of the highways for the purpose of travel and transportation is not mere privilege, but a common and fundamental Right of which the public and the individual cannot be rightfully deprived." <u>Chicago Motor Coach vs. Chicago</u>, 169 NE 22? 1; <u>Ligare vs Chicago</u>, 28 NE 934. And...

" The Right of the Citizen to travel upon the public highways and to transport his property thereon, either by horse drawn carriage or by automobile, is not a mere privilege which a city can prohibit or permit at will, but a common Right which he has under the right of life, liberty, and the pursuit of happiness." <u>Thompson vs. Smith</u>, 154 SE 579.

So we can see that a Citizen has a Right to travel upon the public highways by automobile and the Citizen cannot be rightfully deprived of his Liberty. So where does the misconception that the use of the public road is always and only a privilege come from?

**51**.   "... For while a Citizen has the Right to travel upon the public highways and to transport his property thereon, that Right does not extend to the use of the highways, either in whole or in part, as a place for private gain. For the latter purpose, no person has a vested right to use the highways of the state, but is a privilege or a license which the legislature may grant or withhold at its discretion." <u>State vs. Johnson</u>, 243 P. 1073; <u>Cummins vs. Homes</u>, 155 P. 171

Here the court held that a Citizen has the Right to travel upon the public highways, but that he did not have the right to conduct business upon the highways. On this point of law all authorities are unanimous.

"Heretofore the court has held, and we think correctly, that while a Citizen has the Right to travel upon the public highways and to transport his property thereon, that Right does not extend to the use of the highways, either in whole or

in part, as a place of business for private gain." <u>Willis vs Buck</u>, 263 P. 1 982; <u>Barney vs. Board of Railroad Commissioners</u>, 17 P.2d 82 and...

**52**.    "The right of the Citizen to travel upon the highway and to transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes highway his place of business for private gain in the running of a stagecoach or omnibus." <u>State vs. City of Spokane</u>, 186 P. 864

What is this Right of the Citizen which differs so "radically and obviously" from one who uses the highway as a place of business? Who better to enlighten us than Justice Tolman of the Supreme Court of Washington State? In State vs. City of Spokane, the court also noted a very "radical and obvious" difference, but went on to explain just what the difference is:

 **53**.    "The former is the usual and ordinary right of the Citizen, a common right to all, while the latter is special, unusual, and extraordinary." And...

    "This distinction, elementary and fundamental in character, is recognized by all the authorities." <u>State vs. City of Spokane, supra.</u>

This position does not hang precariously upon only a few cases, but has been proclaimed by an impressive array of cases ranging from the state courts to the federal courts.

    "The right of the Citizen to travel upon the highways and to transport his property thereon in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain in the running of a stagecoach omnibus. The former is the usual and ordinary right of the Citizen, a right common to all, while the latter is special, unusual, and extraordinary." <u>EX Parte Dickey, (Dickey vs. Davis),</u> 85 SE 781

**54.**                              **CONCLUSION**

1. Can a state arbitrarily and erroneously convert your Right into a privilege and issue a license and a fee for it? NO! THEY CANNOT. A state may not impose a charge for the enjoyment of a Right granted by the Federal Constitution. See. Murdock vs. Pennsylvania 319 U.S. 105

2. If the state does convert your Rights into a privilege and issue you a license and fee for it. You can ignore the license and the fee and proceed with the Right with impunity. Shuttlesworth vs. City of Birmingham 373 U.S. 262

3. Was there a willful intent to commit a traffic violation? NO! THERE WAS NOT. Clearly, there is a constitutional guaranteed Right as stated in Murdock vs Pennsylvania that was relied upon. Therefore, the element of willfully intent cannot be proven.

It is the duty of the court to recognize the substance of things and not the mere form.

  "The courts are not bound by mere form, nor are they to be misled by mere pretenses. They are at liberty indeed they are under solemn duty to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statue purported to have been enacted to protect... the public safety, has no real or substantial relation to those objects or is a palpable invasion of Rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." Mulger vs Kansas, 123 US 623,661 and...

    "It is the duty of the courts to be watchful for the Constitutional rights of the citizen and against any stealthy encroachments thereon." Boyd vs. United States, 116 US 616

The courts are duty bound to recognize and stop the stealthy encroachments which have been made upon the Citizen's Right to travel and to use the roads to transport his property in the "ordinary course of life and business".

Further, the court must recognize that the Right to travel is part of the Liberty of which a Citizen cannot be deprived without specific cause and without the due process of law guaranteed in the <u>Fifth Amendment.</u>

**55.**     The history of this invasion of the Citizen's Right to use the public highways shows clearly that the legislature simply found a heretofore untapped source of revenue, got greedy, and attempted to enforce a statue in an unconstitutional manner upon those free and natural individuals who have a Right to travel upon the highways. This was not attempted in an outright action, bit in a slow, meticulous, calculated encroachment upon the Citizen's Right to travel.

This position must be accepted unless the prosecutor can show his authority for the position that the "use of the road in the ordinary course of life and business" is a privilege.

### STATEMENT OF DAMAGES

56.  As a direct and proximate result of Defendants' acts and omission, Plaintiff Howard Anthony Brown, suffers loss of mobility to move from place to place, by means of his automobile.

57.  As a direct and proximate result of Defendants' acts and omission, Plaintiff Howard Anthony Brown, suffers loss to means of protecting one's self from the criminal elements.

58.     As a direct and proximate result of Defendants' acts and omission, Plaintiff Howard Anthony Brown, sustained a financial loss, and continues to sustain that

loss by not having the required license to use the public highway for a financial gain.

59.    As a direct and proximate result of Defendants' acts and omission, Plaintiff Howard Anthony Brown, sustained a financial loss, and continues to sustain that loss, by not having the required tools needed to maintain gainful employment.

60.    Plaintiffs' claims for general damages include claims for pain, suffering and emotional distress in amounts to be determined according to proof.

61.    Defendants and each of them is liable for Plaintiffs' injuries and damages pursuant to 18 USC sec. 245, 42 U.S.C. sec.1983, 42 U.S.C. sec. 1985, 42 U.S.C. section 1986 as set forth below.

62.    Defendants' acts and omissions were intentional, willful, malicious, reckless, and in conscious disregard of Plaintiff's protected rights. As such and to deter future similar conduct by Defendants, Plaintiff is entitled to an award of punitive damages against Defendants.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983

**Fourth Amendment Violation: Unlawful Search, Seizure, and Excessive Force (Against Defendants Lieutenant K. Williams, Officer Eric Illarmo, Officer Marcus McNeil, Officer K. Balancier, Officer D. Warter, Officer M. Sartain, Officer A. Kelly, Officer D. Millon, Officer M. Thompson and  Officer M. Hunter, in their official and individual capacities).**

63.  Plaintiff's incorporate by reference the allegations set forth above and below.

64.  All named Defendants, in this first cause of action, acted under the color of law, and conspired to deprive, and acting jointly and in concert with one another

did deprive Plaintiff of his clearly established constitutional guaranteed rights pursuant to the Fourth Amendment to the United States.

65.   All named Defendants, in this first cause of action, intentionally searched, Plaintiff and Plaintiffs' private property without a search warrant and without probable cause.

66.   All named Defendants, in this first cause of action, did intentionally seize plaintiffs' private property without due process of law.

67.   As a result of Defendants unlawful conduct, as alleged herein, Plaintiff have suffered, and will continue to suffer, the above stated damages in the amount according to proof, including cost and fee of suit, to remedy the unlawful conduct. WHEREFORE, plaintiff pray for relief as set forth herein.


## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983
**Fifth Amendment Violation: Deprived of Liberty, Property and Just Compensation (Against Defendants Lieutenant K. Williams, Officer Eric Illarmo, Officer Marcus McNeil, Officer K. Balancier, Officer D. Warter, Officer M. Sartain, Officer A. Kelly, Officer D. Millon, Officer M. Thompson and Officer M. Hunter, in their official and individual capacities).**

68.   Plaintiff's incorporate by reference the allegations set forth above and below.

69.   All named Defendants, in this second cause of action, acted under color of law, and acting jointly did deprive Plaintiff of Liberty to move, which is clearly established as a guaranteed right, pursuant to the Fifth Amendment of the United States Constitution.

70.   All named Defendants, in this second cause of action, acted under the color of law and acting jointly did deprive Plaintiff of his private property without due

process of law, which is clearly established as a guaranteed right, pursuant to the Fifth Amendment of the United States Constitution.

71. All named Defendants, in this second cause of action, acted under the color of law and acting jointly did deprive Plaintiff of property, without any compensation, which is clearly a guaranteed right, pursuant to the Fifth Amendment of the United States Constitution.

72. As a result of Defendants unlawful conduct, as alleged herein, Plaintiff have suffered, and will continue to suffer, the above stated damages in the amount according to proof, including cost and fee of suit, to remedy the unlawful conduct. WHEREFORE, plaintiff pray for relief as set forth herein.

## THIRD CAUSE OF ACTION
### 18 U.S.C. § 245 Federally Protected Activities
**(Against Defendants Lieutenant K. Williams, Officer Eric Illarmo, Officer Marcus McNeil, Officer K. Balancier, Officer D. Warter, Officer M. Sartain, Officer A. Kelly, Officer D. Millon, Officer M. Thompson and Officer M. Hunter, in their official and individual capacities).**

73.   Plaintiff's incorporate by reference the allegations set forth above and below.

74.   All named Defendants, in this third cause of action, acted under the color of law, and acting jointly did willfully and intentionally deprive Plaintiff of traveling in or using any facility of interstate commerce by means of his automobile.

75.   As a result of Defendants unlawful conduct, as alleged herein, Plaintiff have suffered, and will continue to suffer, the above stated damages in the amount according to proof, including cost and fee of suit, to remedy the unlawful conduct. WHEREFORE, plaintiff pray for relief as set forth herein.

## FOURTH CAUSE OF ACTION
### 42 U.S.C. § 1983
### Second Amendment Violation: To Keep and Bear Arms.
**(Against Defendants Lieutenant K. Williams, Officer Eric Illarmo, Officer Marcus McNeil, Officer K. Balancier, Officer D. Warter, Officer M. Sartain, Officer A. Kelly, Officer D. Millon, Officer M. Thompson and  Officer M. Hunter, in their official and individual capacities).**

75.   Plaintiff's incorporate by reference the allegations set forth above and below.

76.   All named Defendants, in this forth cause of action, acted under the color of law, and acting jointly did willfully and intentionally infringed on Plaintiffs' Right by  depriving Plaintiff without just cause, the right to keep his fire arm,  which is clearly established as a guaranteed right, pursuant to the Second Amendment of the United States Constitution.

77.   As a result of Defendants unlawful conduct, as alleged herein, Plaintiff have suffered, and will continue to suffer, the above stated damages in the amount according to proof, including cost and fee of suit, to remedy the unlawful conduct. WHEREFORE, plaintiff pray for relief as set forth herein.

## FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983
### MUNICIPIAL AND SUPERVISIORY LIABILITY
**( Against Defendants City of New Orleans, Mitchell J. Landrieu, Rebecca H. Dietz, Michael S. Harrison, Lawrence Dupree).**

78.  Plaintiff's incorporate by reference the allegations set forth above and below.

79.   On information and belief, the unlawful conduct of Defendants Lieutenant K. Williams, Officer Eric Illarmo, Officer Marcus McNeil, Officer K. Balancier, Officer D. Warter, Officer M. Sartain, Officer A. Kelly, Officer D. Millon, Officer M. Thompson and Officer M. Hunter, was pursuant to and made possible by the customs, policies, practice, and / or procedures of the City of New Orleans and the New Orleans Police Department, which includes, but or not limited to the following:

a.   engage in, condoning, ratifying and / or failing to properly investigate or discipline unreasonable seizer, including the use of excessive, unreasonable and unjustified force;

b.   engaging in, condoning, ratifying and / or to properly investigate or discipline officers who deprive citizens of due process of law who exercise their constitutionally protected rights.

c.   improperly hiring, and improperly and inadequately training and supervising officers and failure to adopt and/ or enforce policies and procedures for the proper training, and supervision of officers.

d.   inadequately investigating and failing to adopt and/ or enforce rules, regulations, policies, and procedures for the proper investigation of and response to citizens' complaints about officer's misconduct.

80.   The right set forth above or embodied in clearly established constitutional law pursuant to the fifth, second and Fourth Amendments to the United States Constitution.

81.  As a result of the custom, policies, practice, and / or procedures listed above Defendants Lieutenant K. Williams, Officer Eric Illarmo, Officer Marcus McNeil, Officer K. Balancier, Officer D. Warter, Officer M. Sartain, Officer A. Kelly, Officer D. Millon, Officer M. Thompson and Officer M. Hunter, believed that their actions will not be monitored, investigated, or result in any disciplinary action by their supervisor and would instead be tolerated, ratified, and/ or condoned.

82.   The forth going custom, policies, practice, and/or procedures constitute deliberate indifference on the part of Defendants, City of New Orleans, Mitchell J. Landrieu, Rebecca H. Dietz, Michael S. Harrison, and Lawrence Dupree, to Plaintiffs' Constitutional Right.

83.   As a result of Defendants unlawful conduct as alleged herein, Plaintiff have suffered, and continue to suffer, the above stated damages in an amount according to proof, including cost and fee of suit, to remedy the unlawful conduct. WHEREFORE, plaintiff pray for relief as set forth herein.


SIXTH CAUSE OF ACTION
28 U.S.C. § 2201, 2202
Injunctive and Declaratory Relief
(Against Defendants City of New Orleans, Mitchell J. Landrieu, Rebecca H. Dietz and Michael S. Harrison)


84.  Plaintiff's incorporate by reference the allegations set forth above and below.

85.  An actual and substantial controversy now exist between Plaintiff and Defendants as to whether a citizen who is exercising his God given Right, which is guaranteed by the United States and Louisiana Constitution to travel. Can have

his property seized by the City of New Orleans and New Orleans Police Department.

86.   Unless the court issues an appropriate declaration of rights, the parties will not know whether Defendants policies and practice comply with the law, and Plaintiff will likely be subjected to adverse action on the basis of Defendants conduct as set forth above.

87.   Defendants conduct as set forth above, violates 42 U.S.C. § 1983, the Second, Fourth, and Fifth Amendment to the United States Constitution.

88.   As a result of Defendants unlawful conduct as alleged herein, Plaintiff have suffered and will continue to suffer the above stated damages in and amount according to proof, including cost and fee of suit, to remedy the unlawful conduct, WHEREFORE, plaintiff pray for relief as set forth herein.


## JURY TRAIL DEMAND

89.            Plaintiff hereby request a jury trial in this action as per the VII. Amendment to the U.S.  Constitution.


## RELIEF REQUESTED

Wherefore, Plaintiff respectfully request that this following Relief:

1. Compensatory damages in the amount of $500,000.00 against all Defendants.

2. Special damages according to proof against all Defendants.

3. Punitive Damages in an amount according to proof against all Defendants.

4.  Statutory Damages and penalties pursuant to Louisiana Civil Code article 1804, 2324 and article 2323 (a).

5.  Declaratory judgment that Defendants policies and practice violate plaintiff Rights as guaranteed under 42 U.S.C. § 1983 and the Second, Fourth and Fifth Amendment to the United States Constitution.

6.   An Immediate injunction against Defendant to return to Plaintiff's' all property, that was taken forthwith.

7.   Permanent Injunction against Defendants and its officers, agents, successors, employees, and representatives prohibiting them from

   a.   Retaliating against persons who exercises their constitutionally guaranteed right, to include the Second, Fourth and Fifth Amendment.

8.   Such other relief as the court finds just and proper

Dated: _12/12/2016_

By: _____

Howard Anthony Brown, PRO SE
4711 Marque Drive New Orleans
Louisiana, Republic 70127
504-251-1203