UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HOWARD ANTHONY BROWN** | **CIVIL ACTION** |
| **VERSUS** | **NO.16-17080** |
| **CITY OF NEW ORLEANS, ET AL.** | **SECTION "S"** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. #9) is **GRANTED**, and plaintiff's claims are **DISMISSED WITH PREJUDICE**.

## BACKGROUND

This matter is before the court on a motion to dismiss filed by defendants: the City of New Orleans; Michael S. Harrison, Superintendent of the New Orleans Police Department; Lawrence Dupree, Commander of the Seventh District of the New Orleans Police Department; Mitchell J. Landrieu, Mayor of New Orleans; Rebecca H. Dietz, City Attorney of New Orleans; K. Balancier, a New Orleans Police Officer; K. Williams, Lieutenant of the Seventh District of the New Orleans Police Department; Eric Illarmo, a New Orleans Police Officer; Marcus McNeil, a New Orleans Police Officer; D. Warter, a New Orleans Police Officer; M. Sartain, a New Orleans Police Officer; A. Kelly, a New Orleans Police Officer; D. Millon, a New Orleans Police Officer; M. Thompson, a New Orleans Police Officer; and, M. Hunter, a New Orleans Police Officer. Defendants argue that plaintiff's complaint fails to state any claims against them.

Plaintiff, Howard Anthony Brown, filed this action *pro se* alleging that the defendants violated his civil rights in connection with a traffic stop.[1] On November 29, 2016, New Orleans

---

[1] Because plaintiff is proceeding *pro se*, the court must construe his pleadings liberally. Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995). However, "[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law. Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981).

1

Police Officer Kevin Balancier observed Brown run a red light. Brown parked his vehicle at his place of business and was walking toward the entrance when Balancier approached Brown and asked to see his driver's license. Brown refused, stating that he was not a driver at the moment Balancier asked to see his driver's license. Brown's vehicle did not have a license plate or brake tag, but had a disclaimer on the front left side mirror and rear mirror stating:

> TO ANY AND ALL AGENCY OF THE "STATE", INCORPORATED MUNICIPALITY, ENFORCERS OF ANY HOME CHARTERS PLEASE BE SO ADVISE[D]. This is Private Property, Not for Hire, Not operating in Commercial Capacity. Any attempt to convert this Private Property into a commercial one for the purpose of taxation you acknowledge doing so at your own peril. Don't wish to contract . . .

Brown alleges that Balancier placed a radio call for assistance, and six to eight police vehicles arrived. Brown alleges that the "other units" repeatedly asked for his driver's license and "one of the other officers[,]" described as a black male in his mid to late twenties and about five-feet-eight-inches tall, approached Brown's vehicle and went inside it while Brown was telling him to stop. Brown alleges that he was "physically assaulted by another officer that was on the scene[,]" when that officer grabbed Brown by the arm and pushed him about two feet. Brown further alleges that the officer who searched his vehicle approached him "aggressively" and removed his wallet and firearm from his pockets. Brown asked the officers for a search warrant.

Thereafter, an officer handcuffed Brown and put him in the back of a police vehicle. Brown claims that the officers told him that he was under arrest. Brown alleges that while he was in the police vehicle, he "observed two other officer[s] going through [his] wallet, removing [his] money and other personal items." Brown told the officers that they were violating his rights, and the officers replied that they had authority for their actions.

Brown alleges that forty-five minutes later "another officer" asked him to turn over the keys to his vehicle. Thereafter, a tow truck removed Brown's vehicle. Brown claims that, while he was still in the back of the police vehicle, two female New Orleans Police Officers approached him stating that they were lieutenants. Brown describes them as both being five-feet-five-inches tall and stoutly built, and one had black hair and glasses, whereas the other had short blonde hair. Brown did not speak to these female officers. After Brown's vehicle was towed, he was taken out of the police vehicle and the handcuffs were removed. Brown was issued citations for disregarding a red light, and for not having a license plate, break tag, motor vehicle registration or proof of motor vehicle insurance. The officers retained Brown's driver's license and firearm, with instructions on how he could recover the firearm the next day during business hours.

Brown alleges that on December 1, 2017, he sent correspondence to Harrison and Dupree informing them about the November 29, 2016, incident and requesting that his property be returned with an apology. Brown also sent similar correspondence to Dietz and Landrieu explaining the incident and seeking return of his property with an apology.

On December 12, 2016, Brown filed this suit in the United States District Court for the Eastern District of Louisiana. He alleges that the defendant officers, Willams, Illarmo, McNeil, Balancier, Warter, Sartain, Kelly, Millon, Thomas and Hunter, are liable in their individual and official capacities under 42 U.S.C. § 1983 for conspiring to violate his rights guaranteed by the Fourth Amendment to the Constitution of the United States by subjecting him to unlawful search and seizure and the use of excessive force. Brown also alleges that the defendant officers are liable under § 1983 for conspiring to deprive Brown of the "liberty to move" and "of his private property without due process of law" in violation of the Fifth Amendment to the Constitution of the United States, and for conspiring to violate his right to bear arms secured by the Second Amendment to

3

the Constitution of the United States. Further, Brown alleges that the defendant officers are liable under 18 U.S.C. § 245 for "acting jointly" to impound his vehicle which violated Brown's federally protected right "of traveling in or using by facilities of interstate commerce." Finally, Brown alleges that the city defendants, Landrieu, Dietz, Harrison and Dupree, are liable in their official capacities under § 1983 for the defendant officers' actions because the officers defendants' actions were done "pursuant to and made possible by the customs, policies, practices, and/or procedures of the City of New Orleans and the New Orleans Police Department" including failing to investigate and punish officers for instances of unreasonable seizure and use of excessive force or other depravations of civil rights, and improperly hiring, training and supervising officers.

All defendants filed a motion to dismiss arguing that Brown failed to properly plead any claims against them. The defendant officers claim that they are entitled to qualified immunity as to Brown's § 1983 claims. The city defendants argue that Brown did not adequately plead municipal liability as to his § 1983 claims. Finally, all defendants argue that Brown does not have a claim under 18 U.S.C. § 245 for the defendant officers' impounding his vehicle.

## ANALYSIS

### I. Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, pleadings must contain a short and plain statement of the claim showing that the pleader is entitled to relief. To comply with Rule 8(a)(2), a plaintiff need not plead specific facts, but only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. v. Twombly, 127 S.Ct. 1964 (2007) (quoting Conley v. Gibson, 78 S.Ct. 99, 103 (1957)). Thus, to survive a Rule 12(b)(6) motion to dismiss, enough facts

to state a claim for relief that is plausible on its face must be pleaded. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Twombly, 127 S.Ct. at 1964-65 & 1973 n. 14). A claim is plausible on its face when the plaintiff pleads facts from which the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S.Ct. at 1965. The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." In re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008). However, the court need not accept legal conclusions couched as factual allegations as true. Iqbal, 129 S.Ct. at 1949-50. In considering a motion to dismiss for failure to state a claim, a district court may consider only the contents of the pleading and the attachments thereto. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)).

## II. Brown's Conspiracy Claims against the Defendant Officers

Brown alleges that the defendant officers are liable under § 1983 because they conspired to violate his rights guaranteed by the Second, Fourth and Fifth Amendments to the Constitution of the United States. Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983; Monell v. Dep't of Soc. Servs., 98 S.Ct. 2018 (1978). Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. Olabisiomotosho v. City of Hous., 185 F.3d 521, 525 n. 3 (5th Cir. 1999). To pursue a claim under section 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and; (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law. Sw. Bell Tel., LP v. City of Hous., 529 F.3d 257, 260 (5th Cir. 2008); see also West v. Atkins, 108 S.Ct. 2250, 2255-54 (1988).

A § 1983 conspiracy claim is a "legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but a conspiracy claim is not actionable without an actual violation of section 1983." Hale v. Townley, 45 F.3d 914, 920 (5th Cir. 1995). A conspiracy claim under § 1983 requires an agreement to commit an illegal act, and an actual deprivation of constitutional rights in furtherance of that conspiracy. Priester v. Lowndes Cty., 354 F.3d 414, 420 (5th Cir. 2004); Hernandez v. Houston, 564 Fed. Appx. 81, 82 (5th Cir. 2014). "Allegations that are merely conclusory, without reference to specific facts, will not suffice." Id. (quoting Brinkmann v. Johnston, 793 F.2d 111, 113 (5th Cir. 1986)). A plaintiff must "develop facts from which a trier of fact could reasonably conclude" that there was an agreement "to commit an illegal act and that a deprivation of constitutional rights occurred." Rodriguez v. Neeley, 169 F.3d 220, 222 (5th Cir. 1999); see also Bohannan v. Doe, 527 Fed. Appx. 283, 300 (5th Cir. 2013) ("A plaintiff must allege specific facts to show an agreement."). Further, "[d]efendants are entitled to qualified immunity from the § 1983 conspiracy claim if they are entitled to qualified immunity from the underlying § 1983 claims." Hill v. City of Seven Points, 31 Fed. Appx. 835, at *9 (5th Cir. 2002). The defendant officers contend that they are entitled to qualified immunity on Brown's underlying § 1983 claims brought against them in their individual capacities.

### A. Qualified Immunity

Qualified immunity is an affirmative defense that protects public officials who are sued in their individual capacities for violations of constitutional rights. Indeed, qualified immunity "is an *immunity from suit* rather than a mere defense to liability." Morgan v. Swanson, 659 F.3d 359,

6

400 (5th Cir. 2011) (emphasis in original). When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. Kitchen v. Dall. Cty., Tex., 759 F.3d 468, 476 (5th Cir. 2014). The United States Court of Appeals for the Fifth Circuit applies "a heightened pleading standard which must be satisfied whenever there is alleged a defense of qualified immunity." Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994). The "heightened pleading standard" requires that "the complaint . . . state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." Id.

"'Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" Morgan, 659 F.3d at 400 (quoting Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2080 (2011)). "Qualified immunity protects government officials performing discretionary functions from individual liability for civil damages, but only 'insofar as their conduct does not violate clearly established . . . rights of which a reasonable person would have known.'" Id. (quoting Harlow v. Fitzgerald, 102 S.Ct. 2727, 2738 (1982)). The court has discretion to decide which of the two prongs of the qualified immunity test to consider first. Id. (citing Pearson v. Callahan, 129 S.Ct. 808, 818 (2009)).

     **B.**    **Brown's Fourth Amendment Claims**

Brown alleges that the defendant officers conspired to violate his Fourth Amendment rights by subjecting him to unlawful search, unlawful seizure and the use of excessive force. The Fourth Amendment, made applicable to the States via the Fourteenth Amendment, "ensures that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause."

Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 195 (5th Cir. 2009). Brown alleges that the defendant officers seized him in violation of the Fourth Amendment when Balancier approached Brown in the parking lot requesting to see his driver's license, and then when an unidentified officer handcuffed Brown and put him in the back of a police vehicle. Brown alleges that the defendant officers violated his Fourth Amendment right to be free from unlawful search and seizure when an unidentified officer, described as a black male in his mid to late twenties and about five-feet-five-inches tall, searched Brown's vehicle and person and removed Brown's wallet and firearm from his pockets. Brown alleges that the defendant officers also subjected him to unlawful seizure when his vehicle was towed. Brown contends that an unnamed officer used excessive force on him by grabbing his arm and pushing him about two feet. Brown alleges that the defendant officers were acting under the color of law and pursuant to their authority as New Orleans Police Officers during the events that give rise to this litigation. Brown has alleged the basic elements of a Fourth Amendment claim under § 1983, although, except for Balancier, it is not specified which defendant officers took the allegedly wrongful actions. Regardless of which defendant officers were the actors, the defendant officers argue that the alleged conduct did not violate Brown's Fourth Amendment rights because they are entitled to qualified immunity.

1. **Objective Reasonableness**

    a. **The Terry-Stop - Balancier's approach, the search of Brown's person and Brown's dentition in handcuffs in the police vehicle**

Brown's Fourth Amendment claims arise out of Balancier's approaching Brown after observing him run a red light. Traffic stops are seizures for the purpose of the Fourth Amendment. United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005). An officer can stop a vehicle when he has "'probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations.'" Whren v. United States, 116 S.Ct. 1769, 1776

8

(1996) (quoting Delaware v. Prouse, 99 S.Ct. 1391, 1400 (1979)).  Prouse "noted approvingly that the foremost method of enforcing traffic and vehicle safety regulations . . . is acting upon observed violations, which afford the 'quantum of individualized suspicion' necessary to ensure that police discretion is sufficiently constrained." Id. (internal quotations and citations omitted).

"The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)." Lopez–Moreno*,* 420 F.3d at 430.  Under the two-part Terry test, "[t]he court must evaluate (1) whether the officer's action was "justified at its inception," and (2) whether the officer's subsequent actions were "reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Smith, 506 Fed. Appx. 319 (5th Cir. 2013) (citing Lopez-Moreno, 420 F.3d at 430).  In this case, Balancier's action was justified at its inception because he observed Brown run a red light in a vehicle that lacked a license plate.  Balancier was acting within his authority to enforce traffic and vehicle safety regulations.

As to the second prong, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, but if further reasonable suspicion emerges during the stop and is supported by articulable facts, detention may continue until the new reasonable suspicion has been dispelled or confirmed." United States v. Swan, 259 Fed. Appx. 656, 659 (5th Cir. 2007) (quotations and citations omitted). Certain police activities, including "requesting documents such as driver's licenses, registrations, or rental papers; running a computer check on those documents; and asking questions about the purpose and itinerary of a driver's trip," are appropriate within the scope of a Terry traffic stop. United States v. Thibodeaux, 276 Fed. Appx. 372, 375 (5th Cir. 2008).  Further, because "traffic stops are especially fraught with danger to police officers[,]" an officer may perform a brief frisk of a driver during a Terry-type traffic stop

if the officer has a reasonable suspicion that the driver may be armed and dangerous. Arizona v. Johnson, 129 S.Ct. 781, 786 (2009) (quotations and citations omitted). The United States Court of Appeals for the Fifth Circuit "has eschewed any particularized limitations on the permissible investigative tools that may be utilized in connection with a Terry stop, holding that the relevant inquiry is whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." Swan, 259 Fed. Appx. at 659 (quotations and citations omitted).

Balancier requested to see Brown's driver's license. Brown admits that he refused. Louisiana law requires a person operating a motor vehicle to have his driver's license in his immediate possession and display it when requested by a police officer to do so. La. Rev. Stat. § 411.1(A)(1). Also, Brown, by referencing the disclaimer he displayed on his vehicle, admits that his vehicle did not have a license plate, break tag, registration or insurance. Failure to have such items constitute violations of La. Rev. Stats. §§ 32:863.1 (insurance), 32:1301 (inspection a/k/a break tag); 47:536 (license plate) and 47:501 and 47:506 (registration). The defendant officers were reasonable in searching Brown for firearms because they knew that Brown had violated several Louisiana traffic laws, Brown professed that he was not required to comply with Louisiana law, and Brown was refusing to comply with Balancier's reasonable directives. Although Brown claims he had a concealed carry permit for the firearm, he did not inform the officers that he was armed. La. Rev. Stat. § 40:1379.3(I)(2) requires a concealed carry permittee armed with a handgun to "notify any police officer who approaches the permittee in an official manner or with an identified official purpose that he has a weapon on his person, submit to a pat down, and allow the officer to temporarily disarm him." Brown's failure to notify the defendant officers of the handgun together with his refusal to comply with their directives and instance that Louisiana law did not apply to him, led the defendant officers to the reasonable conclusion that Brown might pose a

danger. Thus, the defendant officers were justified in detaining Brown handcuffed in the back of the police vehicle to protect their safety while they sorted out the situation. See United States v. Hensley, 105 S.Ct. 675, 683-84 (1985) (holding that officers were "authorized to take such steps as were reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop."). Brown has not presented any evidence or arguments to carry his burden of showing that the officers are not entitled to qualified immunity for these actions. Therefore, the defendant officers' actions were objectively reasonable and they are entitled to qualified immunity with respect to Brown's Fourth Amendment claims regarding the initial traffic stop, searching Brown's person and detaining him in the police vehicle, which are DISMISSED WITH PREJUDICE.

### b. The Search of Brown's Automobile and Wallet

Brown alleges that an unidentified officer unlawfully searched his wallet and automobile without a warrant when he was allegedly placed him under arrest. In United States v. Castro, 596 F.2d 674, 676 (5th Cir. 1979), the United States Court of Appeals for the Fifth Circuit held that a search incident to arrest could properly include the inspection of the contents of the arrestee's wallet. Another well-established exception to the warrant requirement is the "automobile exception" which permits officers to search a vehicle if they have probable cause that the vehicle contains contraband or evidence of a crime. United States v. Ned, 637 F.3d 562, 567 (5th Cir. 2011) (citing United States v. Buchner, 7 F.3d 1149, 1154 (5th Cir. 1993)). The "automobile exception" applies to vehicles parked in places not used for residential purposes because "the vehicle is obviously readily mobile by the turn of an ignition key" and "there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of

11

police regulation inapplicable to a fixed dwelling." Id. (quoting California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 2070, 85 L.Ed.2d 406 (1985)).

In this case, the defendant officers knew that Brown had violated several Louisiana traffic laws and he was refusing to produce his driver's license to the officer that requested it. An officer searched Brown's person and found a firearm. Given the circumstances, it was objectively reasonable for the officers to search Brown's wallet and vehicle to determine his identity and whether the vehicle held further evidence of a crime. Brown has not presented any evidence or arguments to carry his burden of showing that the officers are not entitled to qualified immunity for these actions. Therefore, the defendant officers are entitled to qualified immunity with respect to Brown's Fourth Amendment claims regarding the search of his vehicle and wallet, which are DISMISSED WITH PREJUDICE.

### c. Seizure of Brown's Drivers' License, Vehicle and Firearm

Brown alleges that the defendant officers unlawfully seized his driver's license, vehicle and firearm. Brown was issued a citation for not having proof of insurance in his vehicle. La. Rev. Stat. § 32:863.1(C)(1)(a) provides that, if the operator of an automobile is not able to provide proof of insurance when requested to do so, "the motor vehicle shall be impounded and the operator shall be issued a notice of noncompliance." Further, La. Rev. Stat. § 32:411(B)(1)(c) states that an "officer may retain the driver's license of an operator of a motor vehicle when that operator has been issued a citation alleging that the operator was . . . [c]ited for failure to maintain compulsory [insurance]". Also, La. Rev. Stat. § 40:1379.3 states that an officer may temporarily disarm a person with a concealed carry permit. Brown admits that the officers told him that he could retrieve his vehicle by registering it and obtaining proper insurance. The officers also told Brown that he could retrieve his firearm the next day during business hours. Thus, the defendant

officers' actions with respect to the alleged seizures were objectively reasonable and they are entitled to qualified immunity as to these claims, which are DISMISSED WITH PREJUDICE.

### d. Excessive Force

Brown alleges that an unidentified officer used excessive force on him by grabbing him by the arm and pushing him about two feet. To state "'a § 1983 claim under the Fourth Amendment, a plaintiff must first show that [he] was seized.'" Hamilton v. Kindred, 845 F.3d 659, 662 (5th Cir. 2017) (quoting Flores v. Palacios, 381 F.3d 391, 396 (5th Cir. 2004)). "The plaintiff must then "'show that [he] suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable.'" Id. (quoting Flores, 381 F.3d at 396). Brown has not alleged that he suffered any injury in connection with the alleged use of force. Therefore, the defendant officers are entitled to qualified immunity with respect to Brown's excessive force claim, and that claim is DISMISSED WITH PREJUDICE.

### C. Brown's Fifth Amendment Claim

Brown alleges that the defendant officers conspired to deprive him of his rights guaranteed by the Fifth Amendment to the Constitution of the United States by depriving him of his liberty to move and of his private property without due process. The Fifth Amendment states:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V. "The Fifth Amendment applies only to violations of constitution rights by the United States or a federal actor." Jones v. City of Jackson, 203 F.3d 875, 880 (5th Cir. 2000) (citing Morin v. Caire, 77 F.3d 116, 120 (5th Cir. 1996)). The defendant officers are state, not

federal actors. Therefore, Brown does not have a due process claim against the defendant officers under the Fifth Amendment, and such claims are DISMISSED WITH PREJUDICE.

### D.     Brown's Second Amendment Claim

Brown alleges that the defendant officers conspired to deprive him of his Second Amendment right to bear arms by taking his firearm. In District of Columbia v. Heller, 128 S.Ct. 2783 (2008), the Supreme Court of the United States held that the Second Amendment protects an individual's right to possess and carry weapons for self-defense within the home. The Due Process Clause of the Fourteenth Amendment makes the right to keep and bear arms fully applicable to the States. McDonald v. City of Chicago, 130 S.Ct. 3020 (2010).  However, the Supreme Court has noted that the rights secured by the Second Amendment are not unlimited and citizens are not free "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Heller, 128 S.Ct. at 2816.  Further, the Supreme Court has acknowledged that Heller was its "first in-depth examination of the Second Amendment", and there is uncertainty surrounding the full contours of the right. Id. at 2821.  Thus, "[w]hether and to what extent the Second Amendment protects an individual's right to possess a particular gun (and limits the power of the police to seize it absent probable cause to believe it was involved in a crime) is an issue *that is just beginning to receive judicial attention.*" Sutterfield v. City of Milwaukee, 751 F.3d 542, 571 (7th Cir. 2014). In that vein, there are no clearly established rules regarding whether a police officer is liable under the Second Amendment for confiscating a firearm to protect officer safety during a traffic stop. See Schaefer v. Whitted, 121 F.Supp.3d 701, 711 (W.D. Tex. 2015).  Thus, the defendant officers are entitled to qualified immunity on Brown's Second Amendment claim because Brown has not shown that they violated a clearly established right, and Brown's Second Amendment claim is DISMISSED WITH PREJUDICE.

### III. Brown's Claim against the Defendant Officers Brought under 18 U.S.C. § 245

Brown alleges that the defendant officers violated 18 U.S.C. § 245 by impounding his automobile which deprived him of "traveling in or using any facility of interstate commerce." Section 245 is a criminal statute providing for the prosecution of a person who interferes with the exercise of certain civil rights. See 18 U.S.C. § 245.  The statute does not provide for a private civil cause of action. Kelley v. Rockefeller, 69 Fed. Appx. 414, 415-16 (10th Cir. 20013). Therefore, Brown cannot state a cause of action under § 245, and that claim is DISMISSED WITH PREJUDICE.

### IV. Brown's Official Capacity Claims against the Defendant Officers and the City Defendants

Brown alleges that the defendant officers and the city defendants are liable in their official capacities.  A claim against a police officer or city official in his official capacity is treated as a claim against the municipality that person serves. Brooks v. George Cty., Miss., 84 F.3d 157, 165 (5th Cir. 1996). In Monell, 98 S.Ct. at 2037, the Supreme Court of the United States held that local governments cannot be held liable under § 1983 for constitutional deprivations effected by their individual employees in their official capacities absent a showing that the pattern of behavior allegedly arose from "the execution of a government's policy or custom." To succeed on a Monell claim, the plaintiff must establish: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. Valle v. City of Hous., 613 F.3d 536, 541-42 (5th Cir. 2010).

In this case, Brown's official capacity claims must be dismissed because he cannot prevail on any of the alleged constitutional violation claims.  Therefore, defendants' motion to dismiss is

GRANTED as to Brown's official capacity claims against them, and those claims are DISMISSED WITH PREJUDICE.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. #9) is **GRANTED**, and plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this __7th__ day of March, 2017.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**